IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAYMOND JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:03-CV-2341-D |
| VS. | § | |
| | § | |
| FEDERAL EXPRESS CORPORATION, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this employment discrimination case, plaintiff Raymond Jackson ("Jackson") sues defendants Federal Express Corporation ("FedEx") and Darryl Woods ("Woods"), a co-worker, for race discrimination arising from his termination and a racially hostile work environment, in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. §§ 21.001-21.556 (Vernon 1996 & Supp. 2004-05); for neglecting to prevent conspiracy, in violation of 42 U.S.C. § 1986; and under Texas law for slander and defamation and for intentional infliction of emotional distress.[1]   FedEx moves for summary

---

[1]In his responses to defendants' motions, Jackson apparently attempts to raise new claims (at least against FedEx) for negligent supervision and retention of unfit employees.  Because these claims are not alleged in his first amended complaint, the court will not consider them.  "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.

judgment on all claims.  Woods moves for dismissal under Fed. R. Civ. P. 12(b)(6) or for summary judgment.  For the reasons that follow, the court grants FedEx's motion as to all claims except Jackson's hostile work environment cause of action[2] and grants Woods' motion.

I

Jackson, who is African-American, was a Ramp Transport Driver at FedEx's Dallas/Fort Worth ramp station in 2001.[3]  Ramp Transport Drivers at FedEx transport unloaded freight from the ramp stations, where freight has arrived via aircraft, to ground stations for sorting and final delivery.  Jackson was also a Yard Coordinator. In this capacity, he coordinated the assignments of other Ramp Transport Drivers.  FedEx terminated his employment on October 23, 2001 for fighting while on duty, a violation of Section 2-5 of the Employee Handbook that carries termination as a possible penalty. Jackson had been a FedEx employee for 16 years.  The other party to

_____

1990)).

    [2]As the court explains below, with respect to Jackson's TCHRA-based termination claim and his claim for intentional infliction of emotional distress, the court holds that FedEx is entitled to summary judgment on grounds that the court has raised *sua sponte*. Accordingly, the court will not finally grant summary judgment as to these claims until Jackson has had 20 days to file a memorandum in opposition to the court's proposed action.

    [3]The court recounts the evidence favorably to Jackson, as the summary judgment nonmovant, and draws all reasonable inferences in his favor.  *See, e.g.*, *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

the fight, who is Caucasian, was not discharged because FedEx concluded that Jackson was the aggressor.

At the time Jackson was terminated, FedEx management positions in the geographical area that included Jackson's job location were extensively held by African-Americans.  The Managing Director of the Lone Star District, the Senior Manager of the Dallas/Fort Worth ramp station, and the two Operations Managers of the Dallas/Fort Worth ramp station, including Christopher Lloyd ("Lloyd"), the one who investigated the fight and ultimately terminated Jackson, were African-American.

Jackson alleges that before he was terminated he was subjected to racial harassment by Caucasian co-workers.  In support of this contention, he submits the affidavits of several FedEx employees who aver that they witnessed Caucasian co-workers using profanity, hurling insults and derogatory remarks, and making racial slurs toward him.

Ronnie L. Wooten ("Wooten"), a Ramp Transport Driver, states that he observed several Caucasian drivers direct racial slurs and cursing toward Jackson.

Ronnie Taylor ("Taylor"), a Handler, avers that a Caucasian driver used racial epithets and other derogatory terms of a sexual nature toward Jackson "almost on a daily basis."  P. App. 128.  He also recounts that the driver would "raise his right hand and yell 'white power,'" and that this person complained that FedEx had too

many African-American managers.   Taylor also states that Tim Sullivan ("Sullivan") and Scott Vancil ("Vancil"), both Caucasian drivers, insulted Jackson, "attributing his tough work ethic and strict adherence to policy due to a lack of sex." *Id.* Taylor also avers that he heard Sullivan use racial slurs.

Jeanette Rupert ("Rupert"), who held several positions at FedEx, avers that none of the Caucasian drivers liked Jackson, "partly because he was thorough and hard working.  Many of the white drivers liked to hang out.  But Raymond put them to work." *Id.* at 146-47.  She states that, from 1999 to 2002, drivers made insulting remarks toward Jackson, including sexual comments and racial slurs.  She recounts that she constantly heard racial slurs in the dispatch and yard areas, which made it very difficult for her to work there.

According to Jackson, he "repeatedly complained about the hostile work environment and racial slurs to [FedEx] managers and supervisors.  Nevertheless, [FedEx] failed to provide [him] with the appropriate company discrimination complaint forms." *Id.* at 4.  The affidavit does not provide any details of his complaints, such as how many he made, over what period he made them, to whom the complaints were made, when they were made, and what were the specific subjects of the complaints.

At some point, Jackson made some suggestions to FedEx management that resulted in drivers' hours being cut.  Recognizing

that the drivers were expressing resentment toward Jackson as a result, Lloyd, an Operations Manager, sent an email to Jackson's co-workers asking them to "[p]lease ease up on Raymond." *Id.* at 153.

Jackson alleges that he was terminated on the basis of his race. At 4:15 a.m. on October 12, 2001 Jackson and Vancil, who is Caucasian, were involved in an altercation that led to Jackson's dismissal. Jackson was in a tractor-trailer at the DFW ramp station, preparing to pull the truck out of the loading bay. As was customary, he blew the air horn to warn pedestrians near the back of the truck before pulling out. Vancil, who was standing nearby, took offense to Jackson's sounding the horn. Jackson and Vancil took part in a verbal exchange of insults and profanity. The incident turned into a physical altercation, but Jackson and Vancil disagree as to who was at fault for accelerating a purely verbal exchange into a physical altercation.

Vancil reported the incident to Lloyd, and FedEx began an investigation. Vancil and Jackson were both suspended with pay while the investigation was completed. Lloyd asked both men to write statements detailing the encounter. According to Jackson's statement, Vancil pushed him first, he then pushed back, Vancil attempted to hit him, but he grabbed Vancil to prevent the blow. Vancil grabbed him, and the two fell to the ground. According to Vancil's statement, Jackson charged him, pushed him, and grabbed

and ripped his sweatshirt, bringing him to the ground with Jackson on top of him. Vancil said he never fought back.

Lloyd identified Woods as the only witness to the altercation and asked him for a statement. Woods (who is African-American) gave a statement that corroborated Vancil's account. He averred that Jackson struck Vancil first and that Vancil was never physically aggressive toward Jackson. Based on Vancil's complaint and Woods' account, Lloyd concluded that Jackson was the physical aggressor. Woods' time sheet for October 12, 2001 indicates, however, that he was not on duty until 5:00 a.m. Moreover, Taylor alleges that Woods later admitted lying about some aspects of the altercation: "[Woods] admitted to me that he lied about the incident between [Jackson] and [Vancil]. Woods falsely claimed that I had seen the fight. I was at the location but I never saw the confrontation." *Id.* at 129. FedEx later terminated Woods' employment for falsifying his time card. Woods was later convicted of criminal conspiracy, burglary, and credit card abuse based on conduct unrelated to this lawsuit.

FedEx terminated Jackson's employment on October 23, 2001 for violating Section 2-5 of the Employee Handbook, which prohibits fighting while on duty. FedEx gave Vancil a warning letter for using profanity. Jackson initiated FedEx's Guaranteed Fair Treatment Process ("GFTP") on October 24, 2001. The GFTP is an appeal of disciplinary action taken against a FedEx employee.

- 6 -

Jackson first made a formal complaint of race discrimination to management during the GFTP. FedEx again concluded that Jackson——not Vancil——was the physical aggressor in the altercation, and it upheld Jackson's termination.

II

FedEx first moves for summary judgment as to Jackson's race discrimination claim under Title VII and § 1981,[4] which is based on his termination.

A

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Section 1981 guarantees "[a]ll persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts" regardless of race. 42 U.S.C. § 1981(a). "Claims of racial discrimination brought under § 1981 are governed by the same

_____

[4]In his first amended complaint, *see* 1st Am. Compl. ¶ 41, Jackson relies on § 1981(a), which states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

evidentiary framework applicable to claims of employment discrimination brought under Title VII." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996).

Because FedEx will not have the burden of proof at trial on Jackson's claim, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support it. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, Jackson must then go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandatory if he fails to meet this burden. *Little,* 37 F.3d at 1076.

In the context of a Title VII/§ 1981 race discrimination claim, Jackson must present sufficient direct or circumstantial evidence that would permit a reasonable trier of fact to find that his African-American race was a motivating factor in the decision to discharge him. *See, e.g., Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004) (addressing Title VII claims for race, color, religion, sex, or national origin discrimination). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v.*

*Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3. (5th Cir. 2003) (Fitzwater, J.) (age discrimination case) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).   A plaintiff who offers "sufficient direct evidence of intentional discrimination should prevail, just as in any other case where a plaintiff meets his burden." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996) (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 n.6 (5th Cir. 1994)). Because, as the court explains below, Jackson has not adduced direct proof of race discrimination, he must rely on circumstantial evidence.

If direct evidence is unavailable, Jackson can prove discrimination using the "modified *McDonnell Douglas* approach." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case).   As modified, *McDonnell Douglas* consists of three stages.   First, Jackson must establish a prima facie case of discrimination, which "creates a presumption that [FedEx] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).   The burden then shifts to FedEx to articulate a legitimate, nondiscriminatory reason for discharging him. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).   FedEx's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West*, 330 F.3d at 384.   Finally, if FedEx meets its production burden,

then Jackson may proceed under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid*, 376 F.3d at 312. Under the pretext alternative, Jackson must "offer sufficient evidence to create a genuine issue of material fact . . . that [FedEx's] reason is not true, but is instead a pretext for discrimination." *Id.* (internal quotations omitted). Under the mixed-motives alternative, Jackson must offer sufficient evidence to create a genuine issue of material fact "that [FedEx's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Jackson's] protected characteristic[.]" *Id.* (internal quotations omitted).

B

Jackson maintains that he has adduced direct evidence of FedEx's intentional discrimination against him on the basis of his race. As noted, direct evidence proves the fact of discriminatory animus without inference or presumption. *West*, 330 F.3d at 384 n.3. "Such evidence typically involves statements made by the employer or certain of its personnel that indicate that an employment decision was based on a forbidden factor." *Bowe v. Exide Corp.*, 2001 WL 705881, at *3 n.1 (N.D. Tex. June 18, 2001) (Fitzwater, J.).[5]

The only purportedly direct evidence of discrimination that

---

[5]Jackson seems to argue, for example, that evidence that he was fired is direct evidence of discrimination. Such an assertion, if intended, would clearly be misplaced.

- 10 -

Jackson has adduced consists of the following statements Lloyd made about him: "[W]hat kind of mood is Ray in today?  Is he an a--hole? Is he on his period?"  P. App. 129.  Although these remarks are evidence of Lloyd's hostility toward Jackson, they do not facially demonstrate that FedEx terminated Jackson based on his race.  *See Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) ("In a Title VII context, direct evidence includes any statement or document which shows *on its face* that an improper criterion served as a basis . . . for the adverse employment action.") (emphasis added)).  Moreover, even if it could be reasonably inferred from these statements that they are race-based—a doubtful proposition, since they do not even refer to race, are not typologically racial, and the person who made them *is African American*—such an inference is "nonetheless a necessary one if the statement is to be accepted as evidence of discriminatory intent." *Read v. BT Alex Brown Inc.*, 72 Fed. Appx. 112, 119 (5th Cir. 2003) (unpublished opinion).  Jackson has not introduced direct evidence of intentional discrimination based on his race. Lacking such evidence, he must establish an inference of discrimination under the modified *McDonnell Douglas* framework.

C

Under the first step, Jackson must make out a prima facie case of race discrimination.

> To establish a prima facie case of employment discrimination [Jackson] must establish that he (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably.

*Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (addressing discharge-based § 1981 claim); *see also Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir.) ("To establish a prima facie case of discrimination under § 1981, Appellants must establish that they: (1) are members of a protected group; (2) were qualified for the position held; (3) were discharged from the position; and (4) were replaced by persons outside of the protected group." (citing *Singh v. Shoney's, Inc.*, 64 F.3d 217, 219 (5th Cir. 1995) (per curiam)), *cert. denied*, ___ U.S. ___, 126 S.Ct. 798 (2005). The Fifth Circuit "has recognized that a plaintiff may make [the prima facie] showing by demonstrating either that he was replaced by someone outside the protected class or that other similarly situated employees outside the protected class were treated more favorably." *Wheeler*, 415 F.3d at 405 (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)).

In this case, the first three elements are uncontested. To establish the fourth element, Jackson does not contend that he was replaced by someone outside the protected class. He instead contends that similarly situated Caucasian employees were treated more favorably than he.[6] Jackson posits that FedEx is selective in its discipline, treating African-American employees more harshly than Caucasian employees for violations of company policy. As proof, Jackson points to several incidents in which Caucasian employees were not terminated for using profane, abusive, or threatening language toward managers. Jackson must show, however, that FedEx treated Caucasian employees more favorably in "nearly identical circumstances." *E.g.*, *Ryburn v. Potter*, 155 Fed. Appx. 102, 107 (5th Cir. 2005) (per curiam) (unpublished opinion) (quoting *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000) (age discrimination case)). The circumstances of

---

[6]FedEx treats this as a work-rule violation case on the basis that it discharged Jackson for violating a work rule that prohibits fighting. "In work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980) (per curiam)). Jackson does not explicitly attempt to establish a prima facie case through the work-rule method. He does, however, contend that similarly-situated Caucasian employees were treated more favorably than he. This showing, if supported by the evidence, is sufficient under the work-rule paradigm and under the fourth element of the disparate-treatment formulation, which includes the alternative showing that similarly-situated employees of a different race were treated more favorably.

the proffered incidents involve only verbal confrontations and are thus not nearly identical to Jackson's incident, in which he admitted using physical force against Vancil. Nevertheless, accepting Jackson's version of the facts as true, Vancil, a Caucasian employee, provoked the confrontation with Jackson and used physical force during the incident, but was not terminated. This is sufficient for Jackson to establish a prima facie case of disparate treatment.[7]

D

To rebut the presumption of unlawful discrimination raised by Jackson's prima facie case, FedEx must produce evidence that it discharged Jackson for a legitimate, nondiscriminatory reason. *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07. FedEx "'must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* at 507 (quoting *Burdine*, 450 U.S. at 254-55) (emphasis omitted). FedEx's burden "is one of production, not proof, and involves no credibility assessments." *Martin v. El Nell Inc.*, 2005 WL 2148651, at *2 (N.D. Tex. Sept. 7,

---

[7]The record would also permit the conclusion that Vancil's conduct was not "nearly identical" to Jackson's because Jackson, not Vancil, was the aggressor, and his conduct warranted termination under company policy. But because establishing a prima facie case is not an onerous burden, *see Burdine,* 450 U.S. at 253, and viewing the evidence favorably to Jackson, the court holds that he has satisfied the fourth element of the prima facie test.

- 14 -

2005) (Fitzwater, J.).   If FedEx meets its burden, then the presumption of discrimination raised by Jackson's prima facie case is rebutted and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11.

FedEx has met its burden of production.  It points to summary judgment evidence that it terminated Jackson's employment for fighting while on duty, in violation of FedEx's Acceptable Conduct Policy, Section 2-5 of the Employee Handbook.  "An employee's violation of a company work rule is a legitimate, nondiscriminatory reason for discharging him." *Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *6 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.). Furthermore, Jackson admitted in his deposition and in a written statement prepared shortly after the altercation that he pushed Vancil during the incident.

E

Because FedEx has satisfied its burden to produce a legitimate, nondiscriminatory reason for Jackson's discharge, in order for Jackson to survive summary judgment, he must create a genuine and material fact issue regarding the ultimate question of discrimination.

1

As noted, under the modified *McDonnell Douglas* approach, Jackson can do this in one of two ways.  Under the pretext alternative, he can offer sufficient evidence to create a genuine

- 15 -

issue of material fact that FedEx's reason is not true, but is instead a pretext for discrimination. Under the mixed-motives alternative, he can offer sufficient evidence to create a genuine issue of material fact that FedEx's reason, while true, is only one of the reasons for its conduct, and another motivating factor is Jackson's protected characteristic.

Jackson explicitly states in his brief that he is relying on the mixed-motives alternative. *See* P. Br. 21 ("[This case] is a *mixed motive case* controlled by *Desert Palace, Inc. v. Costa*[, 539 U.S. 90 (2003)].") . But his argument misapprehends the nature of this alternative method of proving discrimination inferentially. He appears to presuppose that, if a defendant-employer asserts a legitimate, albeit unfounded, reason for terminating the plaintiff-employee, and the employee can demonstrate that the reason is illegitimate, this makes the case a mixed-motives case. This assumption is misplaced, because what Jackson is in fact describing is the pretext alternative. "The mixed-motive framework applies to cases in which the employee concedes that discrimination was not the *sole* reason for [his] discharge, but argues that discrimination was *a* motivating factor in [his] termination." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) (addressing retaliation claim under Family and Medical Leave Act). In this case, the court can find no indication that Jackson concedes that discrimination was not the sole reason for his

discharge.

The court will therefore analyze the third step of the modified *McDonnell Douglas* approach under the pretext alternative. Under this approach Jackson may satisfy his burden by showing "that the legitimate reasons offered by [FedEx] were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253). That is, Jackson must produce sufficient evidence for a reasonable trier of fact to find either that FedEx's proffered explanation is unworthy of credence or that a discriminatory reason more likely motivated FedEx's decision to terminate him. *See Burdine*, 450 U.S. at 256. "[T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 255 n.10).

2

In his initial and supplemental briefs,[8] Jackson contends that a fact issue exists concerning whether FedEx's stated reason for termination is worthy of credence because (1) FedEx conducted a

_____

[8]The briefing on FedEx's motion consists of FedEx's July 1, 2005 brief, Jackson's July 21, 2005 brief, FedEx's August 8, 2005 reply brief, FedEx's August 9, 2005 corrected brief, Jackson's August 29, 2005 supplemental brief, and FedEx's September 13, 2005 reply brief. In determining the arguments that Jackson advances in opposition to FedEx's motion, the court has considered each of his briefs.

sham investigation of the incident between Jackson and Vancil, (2) FedEx fired Jackson despite a history of selective discipline and of ignoring violations of company policy in which Caucasians are treated more favorably than African-Americans and (3) FedEx managers conspired to use Woods, a problem employee with a terrible work record, as a witness against Jackson and coerced a statement from him.   These assertions are insufficient to avoid summary judgment.

> the employer begins an investigation and
> discharges an employee based on complaints
> lodged by one or more other employees, . . .
> the validity of the initial complaint is not
> the central issue, because the ultimate
> falseness of the complaint proves nothing as
> to the employer, only as to the complaining
> employee.   The real issue is whether the
> employer reasonably believed the employee's
> allegation and acted on it in good faith, or
> to the contrary, the employer did not actually
> believe the co-employee's allegation but
> instead used it as a pretext for an otherwise
> discriminatory dismissal.   Thus, the inquiry
> is limited to whether the employer believed
> the allegation in good faith and whether the
> decision to discharge the employee was based
> on that belief.

In cases such as this where

*Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165-66 (5th Cir. 1993); *see also Pickens v. Shell Tech. Ventures Inc.*, 118 Fed. Appx. 842, 846 (5th Cir. 2004) (per curiam) (unpublished opinion) ("For the purposes of Title VII, this reasonable belief is enough to justify Pickens's termination."); *accord Jones v. Flagship Int'l*, 793 F.2d 714, 729 (5th Cir. 1986); *Dickerson v. Metro. Dade*

- 18 -

*County*, 659 F.2d 574, 581 (5th Cir. Unit B Oct. 1981); *Jefferies v. Harris County Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir. 1980).

A reasonable trier of fact could only find from the summary judgment evidence that, at the time it discharged Jackson, FedEx in good faith believed the allegation against him and discharged him based on that belief. Jackson asserts that FedEx chose Wendell Beckles ("Beckles")——a person with little experience, training, and knowledge of company policy, disciplinary procedures, and equal employment opportunity investigations to investigate the incident. He complains that Beckles did not even interview him, as company policy required, and that when Rupert tried to offer favorable testimony, she was demoted, her pay was cut, and she was forced to sign a confidentiality agreement. He asserts that FedEx deliberately took "inaction" in his case.

Jackson's arguments concerning FedEx's so-called inept investigation are extremely misleading. The investigation to which he is referring occurred *after* he was terminated, pursuant to the company's GFTP. The altercation occurred on October 12, 2001. It was investigated by Lloyd, who is African-American, and who concluded that Jackson was the aggressor. Jackson was terminated on October 23, 2001. The next day, October 24, 2001, Jackson initiated the FedEx GFTP. His grievance was investigated at Step 1 by Ed Harvey ("Harvey"), a Human Resources Representative.

Harvey interviewed Woods, who said he witnessed the incident, and concluded that Jackson was the aggressor.   Glen Corbin, the Managing Director of the Lone Star District, who is African-American, conducted the GFTP hearing and upheld Jackson's termination.   Jackson then proceeded to Step 2 of the GFTP and filed an equal employment opportunity grievance alleging race discrimination, which had the effect of halting Step 2.   *At this point*, Beckles, a District Director who officed in Miami and who is African-American, and Gwendolyn Lewis ("Lewis"), Beckles' Human Resources Representative and who is African-American, investigated Jackson's EEO grievance.   In other words, the so-called sham investigation conducted by an inept investigator relates entirely to an investigation that took place as part of the EEO process, conducted *after* Jackson had been discharged and *after* two prior investigations had been conducted, both of which had prompted African-American superiors to sustain Jackson's termination.   A reasonable trier of fact could not find on this basis that FedEx lacked a good faith belief that Jackson's conduct warranted termination under company policy.

Jackson also asserts that FedEx fired him amidst a record of selective discipline and favorable treatment of Caucasians.   The alleged favorable treatment of Caucasians is insufficient to prevent summary judgment at the pretext stage for the same reasons that it is inadequate to make a prima facie showing of disparate

treatment. Apart from conclusory assertions in his brief that do not cite to the summary judgment record, Jackson relies on incidents of verbal conduct, not physical aggression, to show that Caucasians were not disciplined.

Finally, Jackson avers that FedEx managers conspired to use Woods as a witness against him. This allegation is based on conclusory assertions, unreasonable inferences, and conjecture that is so thin that it is inadequate to raise a genuine fact issue. For example, to support the assertion in his brief that FedEx coerced a statement from Woods, Jackson cites a disciplinary letter that Woods received. *See* P. Br. 14. To bolster the contention that FedEx's managers convinced Woods to give a statement that he witnessed the altercation, he cites ¶ 9 of the affidavit of Taylor. That paragraph merely contains Taylor's testimony that Woods admitted he had lied about seeing the fight, that Woods had falsely stated that Taylor had seen it, and that pages of documents attached to his affidavit were accurate copies of correspondence with FedEx management. The assertion that "the managers conspired to use Woods, a criminal, as a witness against Jackson," P. Supp. Br. 9, is not supported at all. It precedes the allegation that he was at his managers' mercy because he had been threatened with termination just days before he gave the so-called coerced statement.

"Conclusory allegations, speculation, and unsubstantiated

assertions are inadequate." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)); *see also Lawrence v. Univ. of Tex. Med. Branch*, 163 F.3d 309, 313 (5th Cir. 1999) (per curiam) ("[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief.") (second alteration in original) (quoting *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983)); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995) ("Bald assertions of . . . discrimination are inadequate to permit a finding that proscribed discrimination motivated [the defendant's] actions against [the plaintiff].").[9] Without sufficient evidence to support a reasonable finding of pretext, Jackson has failed to meet his burden at the third stage of the modified *McDonnell Douglas* framework.

Accordingly, the court grants FedEx summary judgment dismissing Jackson's race discrimination claim under Title VII and § 1981.

F

In his first amended complaint, Jackson also alleges that FedEx is liable for violating the TCHRA. Perhaps because the TCHRA claim is not listed in the pertinent heading in the first amended complaint, *see* 1st Am. Compl. § IV, FedEx does not address it in

---

[9]Jackson has also failed to produce evidence that would permit a reasonable trier of fact to find that, in addition to FedEx's proffered reason, it had a discriminatory motive.

its motion or brief.  Nevertheless, Texas courts construe the TCHRA consistently with federal law interpreting Title VII.  *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and Title VII is identical."); *Caballero v. Cent. Power & Light Co.*, 858 S.W.2d 359, 361 (Tex. 1993) ("Another stated purpose [of the TCHRA] is to coordinate and conform with federal law under Title VII of the Civil Rights Act of 1964, as amended." (internal citations omitted)).

Because FedEx is entitled to summary judgment dismissing Jackson's Title VII/§ 1981 race discrimination claim based on his termination, it follows inexorably that Jackson cannot recover under the TCHRA on this claim.  But because FedEx did not raise TCHRA in its motion, it would be error to grant summary judgment on a ground not raised.  *See, e.g., John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987).  The court can, however, grant summary judgment *sua sponte*, provided it gives Jackson adequate notice.  *See, e.g., Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991) ("[D]istrict courts can definitely grant summary judgment *sua sponte*, upon proper notice to the adverse party.").  Accordingly, Jackson is given 20 days from the date of this memorandum opinion and order to file a memorandum in which he states any basis on which he relies to contend that his TCHRA-based termination claim

should not also be dismissed on the same basis that the court has dismissed the Title VII/§ 1981 race discrimination claim arising from his termination.  After considering his response,[10] the court will either dismiss the TCHRA-based termination claim or invite FedEx to file a response.

                                    III

     FedEx also moves for summary judgment as to Jackson's claim of a racially hostile work environment.

                                     A

     To establish a prima facie case of hostile work environment based on race, Jackson must show that (1) he belongs to a protected group, (2) he was subject to unwelcome harassment, (3) the harassment complained of was based on race, (4) the harassment complained of affected a term, condition, or privilege of employment, and (5) FedEx knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey*, 286 F.3d at 268.[11]

_____

     [10]Jackson is not, of course, required to file such a memorandum if, for example, he cannot distinguish his TCHRA claim.

     [11]The fifth element need not be established if the harassment is allegedly committed by the victim's supervisor.  *Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 353-54 (5th Cir. 2001); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Jackson contends that he was harassed by Lloyd, a supervisor, when Lloyd made the following remarks: "[W]hat kind of mood is Ray in today?  Is he an a--hole?  Is he on his period?"  P. App. 129. Jackson has not adduced evidence, however, that Lloyd's remarks were based on Jackson's race.  *See supra* § II(B) (rejecting

                                   - 24 -

B

Jackson meets the first element because he is African-American.

The court thus turns to the second and third components: that he was subjected to unwelcome harassment based on race. Harassment is based on race if "the complained-of conduct had a racial character or purpose." *Harris-Childs v. Medco Health Solutions, Inc.*, 2005 WL 562720, *6 (N.D. Tex. Mar. 10, 2005) (Means, J.). Jackson must demonstrate a "connection between the allegedly harassing incidents and [his] protected status." *Id.* FedEx maintains that Jackson's harassment was not based on race but was instead the result of resentment toward his rigorous work ethic, his expectations of the same from the Caucasian drivers, and his suggestions to management that led to drivers' hours being cut. It also contends that many of the harassing comments merely included profanity and insults and did not include racial slurs.

Jackson states in his affidavit that there were "comments and racial slurs [that] continued to permeate my workplace," P. App. 330, and that he "was force[d] to work under abusive and degrading conditions," *id*. He has also adduced evidence from Wooten, a FedEx

_____

assertion that this proof was direct evidence was of race discrimination). Because Jackson has not created a fact issue of racial harassment on the part of a FedEx supervisor, the court frames Jackson's hostile work environment claim as a claim of co-worker racial harassment. Jackson must therefore demonstrate that FedEx knew or should have known of the co-worker harassment.

- 25 -

Ramp Transport Driver, that for "several years" he "witnessed and heard slurs and cursing directed toward [Jackson] from several white drivers.  I personally experience[d] similar cursing and racial slurs." *Id.* at 125.  Taylor testified that "white [d]rivers constantly made disparaging remarks toward [Jackson]," *id.* at 127, and that one driver called him a "n---er and a faggot and a queer almost on a daily basis," *id.* at 128.  The same person complained that FedEx had too many African-American managers and coordinators.[12]  Rupert testified that she observed drivers use racial slurs against Jackson over a period of several years, from 1999 until 2002.  *Id.* at 147.  She characterized the comments as "'ugly' and ruthless."  *Id.*  Michael Henry ("Henry"), a FedEx Handler, averred that "There was racial tension from both sides and the yard was extremely hostile at times."  *Id.* at 120.  Viewed favorably to Jackson as the nonmovant, this evidence would permit a reasonable trier of fact to find that he was subjected to unwelcome harassment based on race.

_____

[12]Jackson's reliance on this evidence, while helpful to his hostile work environment claim, confirms the weakness of his claim that he was discharged based on his race.  In fact, African-Americans held several top management jobs at the location where Jackson worked at the time he was terminated, and the decision to discharge him was essentially made and upheld by African-American managers.

C

To meet the fourth element, Jackson must demonstrate that the harassment affected a term, condition, or privilege of employment. "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ramsey*, 286 F.3d at 268 (internal quotations omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Title VII prohibits "a [racially] objectionable environment [that is] both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (addressing sex discrimination) (citing *Harris*, 510 U.S. at 21-22). "Actionable harassment must involve 'racially discriminatory intimidation, ridicule[,] and insults.'" *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)) (applying Title VII case law to a claim brought under 42 U.S.C. § 1983); *see also Harris*, 510 U.S. at 21. "In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance.'" *Ramsey*, 286 F.3d at 268 (5th Cir. 2002) (quoting *Walker*, 214 F.3d at 625).  Merely offensive conduct is not actionable.  *Harris*, 510 U.S. at 21.

The evidence concerning the fourth factor makes this a close case because Jackson's proof is limited solely to the use of racial slurs, and, with perhaps one exception (use of the highly offensive word "n---er"), Jackson and the other witnesses describe the racial slurs in only the most general and amorphous terms.[13]  To meet the fourth factor, the conduct must be both objectively and subjectively offensive, such that a reasonable person would find them to be hostile or abusive.  When this evidence is developed and tested at trial, a jury may well find that the actual terms used were not objectively and subjectively offensive, were not used in Jackson's presence with sufficient frequency to be severe or pervasive, or did not unreasonably interfere with his work performance. Nevertheless, the evidence is sufficient to permit a reasonable trier of fact to find that the conduct in question was sufficiently severe or pervasive to alter the conditions of Jackson's employment and create an abusive working environment.  Summary judgment cannot be granted in such circumstances.

This is not a case that, so far as the record shows, is based

---

[13]Henry's testimony about racial tension that was extremely hostile at times, while of probative value in corroborating that Jackson was subjected to unwelcome harassment based on his race, does not relate specifically to Jackson and is not specific as to duration or frequency.

on a limited number of infrequent racial slurs. If it were, summary judgment would be warranted. *See, e.g., Mosley v. Marion County, Miss.*, 111 Fed. Appx. 726, 727-28 (5th Cir. 2004) (unpublished opinion) (per curiam) (holding that admissible evidence of three incidents involving use of racial slurs insufficient to establish genuine issue of material fact for Title VII hostile work environment claim); *Fortenberry v. Texas*, 75 Fed. Appx. 924, 928 (5th Cir. 2003) (per curiam) (unpublished opinion) (harassing conduct, including two incidents almost two years apart where co-workers used racial slurs and remedial action was taken each time, did not affect term, condition, or privilege of employment and, because they were isolated over long time period, they were not sufficiently severe or pervasive to constitute abusive or hostile work environment); *Hurst v. Transcont. Gas Corp.*, 62 Fed. Appx. 557 (5th Cir. 2003) (per curiam) (unpublished opinion) (two alleged racial slurs did not suffice to create hostile work environment). Instead, Jackson's evidence is more like that which the Fifth Circuit has suggested is sufficient to establish a hostile work environment. "[The Fifth Circuit] has opined that '[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII.'" *Walker*, 214 F.3d at 626 (quoting *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1049 n.9 (5th

Cir. 1996)).  In *Wallace* the court assumed that specific evidence of routinely made racist remarks would raise a fact issue that would prevent summary judgment. *Wallace*, 80 F.3d at 1049.  And in *Walker* the panel vacated summary judgment as to the plaintiffs' hostile work environment claim where the offensive remarks began in 1994, shortly after one plaintiff was hired, and had not ceased as of one week before the plaintiffs resigned in May 1997. *Walker*, 214 F.3d at 626.  The precise racial slurs at issue in *Walker* are set out with greater detail in the court's opinion than are the ones in Jackson's evidence.  But, viewed favorably to Jackson, the evidence he has produced is sufficient to withstand summary judgment.

D

The fifth element obligates Jackson to establish that FedEx knew or should have known of the harassment in question and failed to take prompt remedial action.  "A [T]itle VII employer has actual knowledge of harassment that is known to 'higher management' or to someone who has the power to take action to remedy the problem." *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 1999) (sexual harassment case) (citing *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 404 (5th Cir. 1993) (per curiam)).

Jackson avers that he "repeatedly complained about the hostile work environment and racial slurs to [FedEx] managers and supervisors." P. App. 329.  He does not provide any details of his

complaints, such as how many he made, over what period they were made, to whom they were made, when they were made, and what were the specific subjects of the complaints.  He also states that he complained to management as early as February 13, 1997 about "disruptive and hostile conduct and abusive language," *id.* at 330, but he does not specify that the conduct or language was race-based.  In his supplemental brief, Jackson asserts that he reported racial slurs and hostility in April 1997, but he does not provide any further details.  He also states that Henry reported racial slurs directed at him, but he provides no specific information regarding the complaint.  Even if he had provided details in the brief it would not be competent summary judgment evidence.  *See Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence.").  Jackson also asserts in his brief that he complained of harassment during the GFTP process, but this was after his employment had already been terminated.

Nevertheless, even if Jackson has failed at the summary judgment stage to create a genuine fact issue as to FedEx's actual knowledge of racial harassment, he has created a fact issue regarding whether it had constructive knowledge.  A defendant "also may be liable if it had *constructive* knowledge, *i.e.*, if through the exercise of reasonable care it should have known what was going on but failed to address it."  *Sharp*, 164 F.3d at 930.  FedEx can

be found to have had constructive knowledge of Jackson's harassment "[i]f the harassment complained of [was] so open and pervasive that [FedEx] should have known of it, had it but opened its corporate eyes."  *Id.*   The summary judgment evidence would permit a reasonable trier of fact to find that the use of racial slurs and epithets was commonplace at the site where Jackson worked.  Jackson averred that comments and racial slurs permeated his workplace. Wooten said that, over a period of several years, he and Jackson were consistently subjected to racial slurs, and he averred that management lacked control over drivers, who consequently became increasingly profane.  Taylor observed white drivers constantly make disparaging remarks, and one driver called Jackson a "n---er" almost on a daily basis.  Rupert observed drivers use "ugly" and "ruthless" racial slurs against Jackson over a period of several years, from 1999 until 2002, and said that constant cursing and racial slurs made it extremely difficult for her to work at the site.  P. App. 147.  Henry observed that there was racial tension from both sides and the yard was extremely hostile at times.

The evidence would permit a reasonable trier of fact to find there was an environment of open and pervasive racial tension and hostility at Jackson's work site.  A reasonable trier of fact could find that FedEx had constructive knowledge that Jackson was being subjected to a racially hostile work environment and failed to take

prompt remedial action.[14]

Because the court concludes that Jackson has satisfied the elements of a prima facie case of hostile work environment on the basis of race, the court denies FedEx's motion for summary judgment on Jackson's hostile work environment claim under Title VII, § 1981, and the TCHRA.

IV

FedEx next moves for summary judgment on Jackson's state-law claim for slander and defamation on the basis that it is time-barred.

Under Texas law, limitations is an affirmative defense on which FedEx will have the burden of proof. *See, e.g, Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 867 (Tex. App. 1997, no writ) ("The statute of limitations is an affirmative defense."). When the party who will have the burden of proof at trial concerning an affirmative defense seeks summary judgment on the basis of that defense, it "must establish 'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190,

---

[14]This is especially true in light of the lack of any summary judgment evidence that FedEx had a well-communicated anti-harassment policy that afforded Jackson the opportunity to file a complaint of harassment before his discharge. *See Sharp*, 164 F.3d at 930 ("[T]he existence and effectiveness of an anti-harassment policy may be relevant in determining whether the employer should have known about the hostile environment . . . .").

1194 (5th Cir. 1986)).  Under Texas law, a plaintiff has one year from the time the cause of action accrues to bring suit for libel or slander.  Tex. Civ. Prac. & Rem. Code § 16.002(a) (Vernon 2002).

Jackson filed his complaint on October 7, 2003.[15]  FedEx has demonstrated beyond peradventure that Jackson's slander and defamation claim accrued more than one year before he filed suit. Accordingly, FedEx is entitled to summary judgment dismissing his slander and defamation claim as time-barred.

V

The court turns next to Jackson's claim against FedEx for intentional infliction of emotional distress claim.

FedEx posits that it is entitled to summary judgment because Jackson cannot adduce proof that FedEx engaged in outrageous conduct.  Without suggesting that this argument is unsound, the court raises *sua sponte* that the claim should be dismissed for a more fundamental deficiency.

In *Hoffmann-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004), the Texas Supreme Court reiterated that the tort claim of intentional infliction of emotional distress was originally recognized to be a "'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress

_____

[15]In its initial and corrected briefs, FedEx refers to the complaint as having been filed October 8, 2003.  The record reflects that it was filed on October 7, 2003.

in a manner so unusual that the victim has no other recognized theory of redress." *Id.* at 447. In *Hoffmann-LaRoche* the court addressed the claims of a plaintiff who sued her former employer for sexual harassment and intentional infliction of emotional distress. *Id.* at 441-42. It held that because the gravamen of her complaint was sexual harassment, she was unable to pursue both claims unless she proved acts independent of her sexual harassment claim that supported a claim for intentional infliction of emotional distress. *See id.* at 441.

The gravamen of Jackson's complaint of intentional infliction of emotional distress is his race discrimination claims for disparate treatment and a hostile work environment. *See* 1st Am. Compl. ¶¶ 56 (incorporating ¶¶ 9-31) and 57. He does not rely on acts independent of these claims to hold FedEx liable. Accordingly, Jackson is given 20 days from the date of this memorandum opinion and order to file a memorandum in which he states any basis on which he relies to contend that his claim for intentional infliction of emotional distress should not be dismissed on this basis.[16] After considering his response, the court will either dismiss the claim or invite FedEx to file a response.

---

[16]As the court notes *supra* at note 10 concerning Jackson's TCHRA-based discrimination claim, he is not required to file such a memorandum if he cannot demonstrate a viable ground to remove his case from the preclusive reach of *Hoffmann-LaRoche*.

VI

FedEx moves for summary judgment on Jackson's 42 U.S.C. § 1986 claim for neglecting to prevent conspiracy, contending it is time-barred.  Because limitations is an affirmative defense on which FedEx will have the burden of proof at trial, it must establish beyond peradventure all of the essential elements of the defense.

The statute of limitations for a § 1986 claim is one year. *See* 42 U.S.C. § 1986 ("[N]o action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.").  FedEx asserts that Jackson's § 1986 claim accrued when he was terminated on October 12, 2001, and that it is time-barred because Jackson did not file suit until October 7, 2003, nearly two years later.  Jackson does not dispute that the § 1986 claim accrued in 2001; rather, he posits that, under Rule 15(c), the date of filing relates back to the date he filed his complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Jackson's argument is misplaced.

Rule 15(c) provides that "[a]n amendment of a *pleading* relates back to the date of the original *pleading*" under certain circumstances.  Rule 15(c) (emphasis added).  Nothing in Rule 15(c) expressly or in principle allows the date of a claim to relate back

- 36 -

to the date of filing a claim of discrimination with the EEOC.[17]

Accordingly, FedEx has established beyond peradventure that Jackson's § 1986 claim is time-barred, and the action is dismissed.

VII

The court next considers Woods' motion to dismiss the claims against him under Rule 12(b)(6) for failure to state a claim or, alternatively, for summary judgment.

A

As a threshold matter, the court must address the timeliness of Woods' motion.  A Rule 12(b)(6) motion is untimely if it is made after the service of a responsive pleading.  Rule 12(b) ("A motion making any of these defenses shall be made before pleading if a further pleading is permitted."); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 408 (3d ed. 2004).  Woods' Rule 12(b)(6) motion is untimely because he filed it on November 29, 2005, after he answered Jackson's first amended complaint on November 3, 2005.  Nevertheless, the court will treat the motion as if it were a Rule 12(c) motion for judgment on the pleadings.  *See, e.g., Jones v. Greninger*, 188 F.3d 322, 324 (5th

_____

[17]Moreover, Jackson cannot have a valid § 1986 claim absent a viable § 1985(3) claim.  *See Money v. Great Bend Packing Co.*, 783 F. Supp. 563, 576 (D. Kan. 1992).  Jackson's EEOC complaint would have been based on a "deprivation of a right created by Title VII," which "cannot be the basis for a cause of action under § 1985(3)." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 422 U.S. 366, 378 (1979).  For this reason as well, the court views Jackson's EEOC complaint as being distinct from his § 1986 claim.

Cir. 1999) (per curiam) (upholding this court's conversion of Rule 12(b)(6) motion into one under Rule 12(c)). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion under Rule 12(b)(6). *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) (Fitzwater, J.) (citing 5A Wright & Miller, *supra* § 1368, at 591 (Supp. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion.") (footnote omitted)). Jackson does not object to this procedure. In his brief in response to Woods' motion, he in fact states that the court must treat the motion as one for judgment on the pleadings under Rule 12(c) or 12(h)(2). *Cf*. *Joseph v. Patterson*, 795 F.2d 549, 562 n.1 (6th Cir. 1986) (noting that it is appropriate to treat untimely Rule 12(b)(6) motion as Rule 12(c) motion when plaintiff does not object).

                                    B

     Woods first moves for judgment as to Jackson's Title VII claim. He contends the claim is time-barred, Jackson failed to exhaust his administrative remedies, and Woods cannot be held liable because he was not Jackson's employer. The court need only address the last contention.

     The court accepts the complaint's well-pleaded facts as true and views them in the light most favorable to Jackson. *See Great Plains*, 313 F.3d at 312-13. The court does not, however, "rely

upon conclusional allegations or legal conclusions that are disguised as factual allegations." *Jeanmarie v. United States*, 242 F.3d 600, 602-03 (5th Cir. 2001). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Great Plains*, 313 F.3d at 312 (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). The motion should not be granted unless Jackson would not be entitled to relief under any set of facts that he could prove consistent with the complaint. *Id.* at 313.

Woods asserts that Title VII does not afford an employee a cause of action against a person who was not his employer. The court agrees. Title VII does not permit the imposition of liability upon an individual who does not meet Title VII's definition of "employer." *See, e.g., Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994). The complaint does not allege any non-conclusional facts that, viewed liberally in Jackson's favor, support the conclusion that Woods was Jackson's employer, nor does it support this inference. In his response brief, Jackson makes no attempt to argue that he can recover against Woods under Title VII, and he relies instead on § 1981. The court thus grants Woods' motion for judgment on the pleadings and dismisses Jackson's Title VII claim against him.

C

Woods moves for judgment dismissing Jackson's § 1981 cause of action on the ground that it is time-barred.  Alternatively, he moves for summary judgment.  The court will address Woods' alternative motion.

As the court has noted above, race discrimination claims brought under § 1981 are governed by the same evidentiary framework that applies to Title VII claims.  To establish a prima facie case of race discrimination relating to his termination, Jackson must demonstrate, *inter alia*, that Woods took an adverse employment action against him.  *See Bryan*, 375 F.3d at 360.  The summary judgment evidence demonstrates that Woods, as Jackson's co-employee, did not and could not have taken the adverse employment action of terminating Jackson's employment.

To establish a prima facie case of hostile work environment, Jackson must demonstrate that Woods subjected Jackson to unwelcome harassment on the basis of his race.  *See Ramsey*, 286 F.3d at 268.  Jackson has not adduced evidence that Woods subjected him to racial slurs, epithets, or other derogatory remarks.  *Cf. Felton*, 315 F.3d at 485 ("Actionable harassment must involve 'racially discriminatory intimidation, ridicule[,] and insults.'") (quoting *Walker*, 214 F.3d at 625)).

Jackson does not directly dispute these deficiencies in his response brief.  Instead, he argues on the basis of allegations in

his first amended complaint that Woods is liable for FedEx's decision to discharge him because Woods' fabricated account of Jackson's altercation with Vancil gave FedEx a pretextual reason to terminate him.  He also maintains that FedEx managers conspired with Woods to terminate him based on his race, using a fabricated, pretextual reason.  Jackson cites allegations of his first amended complaint, but does not adduce summary judgment evidence that Woods subjected him to pervasive harassment, a hostile work environment, higher scrutiny, unfair disciplinary action, and termination.

N.D. Tex. Civ. R. 56.5(c) provides that "[a] party whose . . . response is accompanied by an appendix must include in its brief citations to each page of the appendix that supports each assertion that the party makes concerning the summary judgment evidence."  This court is not required to "comb the record" in search of a genuine issue of material fact.  *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996).  Because Jackson has not cited summary judgment evidence and instead relies on the assertions of his brief or of his first amended complaint, he "is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence."  *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).  "Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence."  *Larry*, 929 F.2d at 211 n.12.

Conclusory assertions, made without any citation to evidence, are insufficient to withstand summary judgment. *See, e.g., Ramsey*, 286 F.3d at 269.[18]

Moreover, Jackson's assertion of a § 1981 conspiracy appears in essence to be a claim under § 1985——the civil rights statute that addresses conspiracies——but he has not asserted a § 1985 claim in this case.

Accordingly, because Jackson has failed to establish a prima facie case either of race discrimination or of a hostile work environment against Woods individually, the court grants Woods' motion for summary judgment dismissing Jackson's § 1981 claim.

D

Finally, the court considers Woods' motion for judgment as to the remaining claims.

Woods asserts that Jackson's § 1986 claim and his state-law claims for slander and defamation and intentional infliction of emotional distress should be dismissed as time-barred. The statutes of limitations for Jackson's § 1986 and slander and defamation claims are one year. The statute of limitations for his intentional infliction of emotional distress claim is two years.

---

[18]Jackson was clearly on notice that the court could decide this question in the context of a summary judgment motion. He cited Rule 56 and the summary judgment standards throughout his response brief, and he specifically recognized his obligations under this court's local civil rules. *See, e.g.,* P. Br. 1 (citing Rule 56 and N.D. Tex. Civ. R. 56.4(b)).

*See Patrick v. McGowan*, 104 S.W.3d 219, 224 (Tex. App. 2003, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 16.003 (Vernon 2002)); *Brady v. Blue Cross & Blue Shield of Tex., Inc.*, 767 F. Supp. 131, 134 (N.D. Tex. 1991) (Fitzwater, J.).

"In the usual case, th[e] court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Simon v. Telsco Indus. Employee Benefit Plan*, 2002 WL 628656, at *1 (N.D. Tex. Apr. 17, 2002) (Fitzwater, J.). "It is well settled . . . that in order for a defendant to prevail on the basis of limitations at the pleadings stage, the plaintiff must normally plead himself out of court." *Funches v. City of Dallas*, 1999 WL 261842, at *2 (N.D. Tex. Apr. 28, 1999) (Fitzwater, J.) (citing *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995) (holding that "if a plaintiff pleads facts that show its suit barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis")). Here, Jackson has done so. It is undisputed that Jackson did not add Woods as a defendant until he filed his first amended complaint on May 17, 2005. He does not dispute Woods' contention that the latest any of these causes of action could have accrued is October 12, 2001—the date of Jackson's termination—more than three years earlier. Instead, he alleges that, under Rule 15(c), the date of the claims relates back to the

date of his complaint, which is October 7, 2003.[19]  He contends that his complaint against FedEx gave Woods fair notice that litigation had arisen from Woods' false testimony concerning Jackson, and that he would also be held liable for discrimination, slander, and conspiracy.

Jackson relies on the mistaken premise that his claim against Woods relates back to the filing of his complaint because it arises out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in his complaint.  He relies for this premise on *Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 432 (5th Cir. 2005).  *Johnson* is distinguishable, however, because it pertains to a factual scenario covered by Rule 15(c)(2).  Rule 15(c)(2) applies when a plaintiff is not changing or adding a party.  The amendment relates back if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]"  Rule 15(c)(2).  In *Johnson* the plaintiff attempted to bring a new § 1981 claim against the same party.  *Johnson*, 398 F.3d at 341.

Here, however, Jackson added Woods as a party for the first time in his first amended complaint.  The only conceivable subsection of Rule 15(c) that would permit the addition of Woods to

---

[19]Even if true, Jackson's § 1986 and defamation claims are nevertheless time-barred, as the court explains *supra* at §§ IV and VI.

relate back is Rule 15(c)(3),[20] which pertains to an amendment that "changes the party or the naming of the party against whom a claim is asserted[.]"   But that subsection is unavailing because it "applies only in cases involving 'a mistake concerning the identity of the proper party.'" *Nelson v. Adams, USA, Inc.*, 529 U.S. 460, 467 n.1 (2000) (quoting Rule 15(c)(3)(B)).   It is apparent from Jackson's complaint and his first amended complaint that he did not mistakenly name another party in place of Woods, whom he had intended to sue.   He originally sued no one except FedEx, and he added Woods as a completely new defendant.   Rule 15(c)(3) therefore affords Jackson no relief, his remaining claims against Woods do not relate back, and they are therefore dismissed as time-barred.

*       *       *

FedEx's July 1, 2005 motion for summary judgment is granted with respect to all claims except Jackson's hostile work environment claim under Title VII, § 1981, and the TCHRA.   Jackson is given 20 days from the date of this memorandum opinion and order to file a memorandum in which he states any basis on which he relies to contend that his TCHRA-based termination claim and his claim for intentional infliction of emotional distress should not be dismissed on the grounds the court has raised *sua sponte*.

---

[20]Jackson does not rely on Rule 15(c)(1), which authorizes an amendment to relate back when "relation back is permitted by the law that provides the statute of limitations applicable to the action[.]"

Woods' November 29, 2005 motion for judgment on the pleadings or for summary judgment is granted, and all of Jackson's claims against him are dismissed with prejudice by Rule 54(b) final judgment filed today.

      **SO ORDERED**.

March 14, 2006.

                                          _____
                                          SIDNEY A. FITZWATER
                                          UNITED STATES DISTRICT JUDGE

- 46 -